IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Mark Ellis Brown, | ) | C/A No. 5:14-04723-JMC-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden, Lee Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Mark Ellis Brown ("Petitioner") is a state prisoner who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 15, 16. On April 9, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the Summary Judgment Motion, dismissal procedures, and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 17. On June 19, 2015, Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment. ECF No. 23. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 15, be granted.

I.    Background

Petitioner is currently incarcerated in the Lee Correctional Institution ("LCI") of the South Carolina Department of Corrections ("SCDC"). ECF No. 1 at 1. In 2004, Petitioner was

indicted at the October Term of the Richland County Grand Jury for nine counts of First-Degree Criminal Sexual Conduct ("CSC") with a Minor (2004-GS-40-5692; 2004-GS-40-10261; 2004-GS-40-10262; 2004-GS-40-10263; 2004-GS-40-10264; 2004-GS-40-10265; 2004-GS-40-10266; 2004-GS-40-10267; 2004-GS-40-10268), five counts of First-Degree Sexual Exploitation of a minor (2004-GS-40-5693; 2004-GS-40-5725; 2004-GS-40-10269; 2004-GS-40-10270; 2004-GS-40-10271), and one count of Second-Degree CSC with a Minor (2004-GS-40-5726). App. 3-4; 14-20; 254-305.[1] Additionally, Petitioner was indicted by a Lexington Grand Jury for second-degree Sexual Exploitation of a child (2005-GS-32-4165). App. 20. On February 6, 2006, Petitioner pleaded guilty to eight counts of first-degree CSC, one count of second-degree CSC, and six counts of sexual exploitation of a minor before the Honorable James R. Barber. App. 1-66. During his plea, Attorney Jahue Moore represented Petitioner, and Assistant Solicitors Kathryn Campbell and Dayton Riddle appeared on behalf of the State. *Id.* Judge Barber sentenced Petitioner to an aggregate sentence of forty-two years on all convictions. App. 61-65. Petitioner did not file a direct appeal of his convictions or sentence.

II.    Procedural History

Petitioner filed an application for post-conviction relief (PCR) on February 21, 2007, alleging several ineffective assistance of counsel claims as well as other claims contained on both the PCR application form as well as a 21-page typed supplement. App. 67-94. The State filed a Return on May 7, 2007. App. 95-98. Thereafter a motions hearing convened on June 26, 2008, before the Honorable William P. Keesley. App. 100-235. Petitioner was present and

---

[1] Citations to "App." refer to the Appendix for Petitioner's guilty plea transcript and Post-Conviction Relief ("PCR") Proceedings. That appendix is available at ECF No. 16-1 in this habeas matter.

represented by Attorney Bryan Jeffries, and Assistant Attorney General Brian T. Petrano appeared on behalf of the State. *See id.* Petitioner and Jahue Moore, Petitioner's plea counsel, appeared and testified at the hearing. *Id.* After the hearing, on June 30, 2008, Attorney Jeffries filed a Notice of Appeal. ECF No. 16-4. On August 5, 2008, the South Carolina Supreme Court dismissed Petitioner's Notice of Appeal without prejudice because "it appear[ed] that the Notice of Appeal was filed before the trial court issued a final order in this case." ECF No. 16-5. By Order of dismissal filed on September 22, 2008, the PCR court denied and dismissed Petitioner's PCR Application with prejudice making the following findings of fact and conclusions of law:

> This Court has had the opportunity to review the record in its entirety and has heard the testimony at the post-conviction relief hearing. This Court has further had the opportunity to observe the witnesses presented at the hearing, closely pass upon their credibility and weigh their testimony accordingly. Set forth below are the relevant findings of facts and conclusions of law as required pursuant to S.C. Code Ann. § 17-27-80(1985).

> The Applicant testified he was sentenced to an aggregate of forty-two (42) years. The Applicant testified that he discussed the amount of time he was facing with his trial counsel and that he decided to plead guilty and throw himself on the mercy of the court. The Applicant testified that there were a "few" of the charges as to which he may have a defense. The Applicant testified that law enforcement did not get permission to search the home from him. His wife is the one who consented. The Applicant testified that, as far as he understands it, the charges never developed from complaints from the victims, rather it was the evidence found in the home which initialized the investigation by law enforcement. The Applicant testified that he was/is aware of the possible punishment as life imprisonment, but that he is "basically serving a life sentence now." The Applicant testified that he wrote to trial counsel from Kirkland "R&E" asking about an appeal. The Applicant testified that trial counsel was ineffective for failing to have the plea court hear the motion to suppress, which would have allowed him the opportunity to know whether or not the evidence would be suppressed in evaluating whether to plead guilty. The Applicant testified that the "scope" of the search was violated. The Applicant testified that there is no legible signature on the warrant and that it is invalid. The Applicant testified that his wife was not stable enough to sign consent and, if she was competent, that the search went beyond the consent. The Applicant testified that he was advised of his right to appeal by the plea court. The Applicant testified that if he had known that he

3

would not have any contact with his attorney after the  trial, he would not have pleaded guilty. The Applicant testified that he had been involved in criminal charges/convictions before, mainly a DUI, but that it did not involve courtroom experience.

Trial counsel testified that he recalls his representation of the Applicant. Counsel was retained, received the discovery, and went over the discovery and charges with the Applicant. Trial counsel testified that the issue(s) regarding the wife's consent was thoroughly examined, that he had conducted "significant research," that it was clear that the wife had authority to grant permission to search the home, and that the search was without any restrictions. Trial counsel testified that once it became clear, and the research indicated that undoubtedly the evidence was going to come in, that there was no way whatsoever to win the case. Trial counsel testified that the case got worse and worse. Trial counsel testified that he tried to negotiate a plea deal, but that the Solicitor "would not budge." Trial counsel testified that usually if no concessions can be made he usually tries the case, but that in this case the only hope of winning was the motion to suppress before Judge Lloyd and the research was not promising - that there was "zero chance" of getting a suppression, and therefore zero chance of winning the case. Trial counsel testified that the evidence was "horrendous" and "horrific." Trial counsel testified that even if they went to trial, he was going to probably pursue a bench trial because a jury would destroy the Applicant after watching and hearing the video. Trial counsel testified that considering that it was unlikely that the evidence could be suppressed; the only hope for less than a consecutive sentence amounting to life was to enter a guilty plea and hope that something would be taken off. Trial counsel testified that he had conducted the research into whether the evidence could be suppressed and that he was aware that the 4th amendment is a personal right and cannot be vicariously asserted. The Applicant had a possessory interest in the home, but his right was not exclusive - the wife could give permission to search and her consent had no limits. Trial counsel testified that he could have made an argument for suppression, but there was no chance it would be successful. By waiving defenses and pleading guilty, the Applicant could get some concessions. Trial counsel testified that the Solicitor would not budge, that he had shouting matches, and that he (counsel) hoped for a better result. However, the acts committed by the Applicant were "grotesque." Trial counsel testified that there was no way the Applicant could take the stand if this had gone to trial. Trial counsel testified that there was nothing wrong with the plea and that there was no reason to appeal. Trial counsel testified that there was no indication from the Applicant that he wanted to appeal. The letter he received from the Applicant after the plea was more of a "what's next" type letter regarding future parole issues. Trial counsel testified that a suppression motion for this case, considering the issues and the evidence, "would have been like firing at a cannon with a pea shooter." Trial counsel testified that the Judge had indicated that he would hear any motion regarding suppression "right before trial," which to

counsel meant that it would be denied. Trial counsel testified that the pretrial was not on the record, but that the concession was for forty-two (42) years as opposed to life and that the Solicitor was demanding life. Trial counsel testified that he was successful in getting the Applicant's Lexington county charges handled together.

In a post-conviction relief action, the Applicant has the burden of proving the allegations in the application. Rule 71.1(e), SCRCP; Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the Applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692 (1984); Butler, 286 S.C. 441, 334 S.E.2d 813 (1985).

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. Courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Butler, 286 S.C. 441, 334 S.E.2d 813 (1985). The Applicant must overcome this presumption to receive relief. Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1989). When there has been a guilty plea, the applicant must prove that counsel's representation was below the standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 58-59 (1985); Alexander v. State, 303 S.C. 539, 542, 402 S.E.2d 484, 485 (1991).

Courts use a two-pronged test in evaluating allegations of ineffective assistance of counsel. First, the Applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." Cherry, 300 S.C. at 117, 385 S.E.2d at 625, (citing Strickland). Second, counsel's deficient performance must have prejudiced the Applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cherry, 300 S.C. at 117-18, 386 S.E.2d at 625. As discussed above, the Applicant has failed to carry his burden in this action. Therefore, this Court finds that the application must be denied and dismissed.

This Court finds Applicant's testimony is not credible, while also finding Applicant's counsel's testimony is credible. Accordingly, this Court finds Applicant has failed to prove the first prong of the Strickland test - that counsel failed to render reasonably effective assistance under prevailing professional norms. This Court also finds Applicant has failed to prove the second prong of Strickland - that he was prejudiced by counsel's performance.

Regarding whether the Applicant's allegations that he was not informed of a direct
appeal, this Court finds the Applicant's allegations to be without merit. The Applicant's testimony regarding writing a letter to counsel and requesting an appeal was not credible. The court accepts trial counsel's interpretation that the letter from the Applicant mailed after the sentencing was more of a "what's next" type letter regarding parole. In addition, the plea court fully advised the Applicant of his right to direct appeal and trial counsel also testified that he (counsel) went over appeal issues with the Applicant. If the letter is interpreted as a request for an appeal to be filed, this record demonstrates no likelihood of success on appeal from the guilty plea.

The Applicant has failed to meet his burden of proof and has failed to demonstrate either deficient performance of counsel or prejudice. Trial counsel testified that he fully researched the issue of suppressing the "horrific" evidence and there was zero chance. The Applicant has presented no evidence or legal argument as to why trial counsel's conclusion was in error. The Applicant has merely asserted that trial counsel should have moved to suppress the evidence before the Applicant pled guilty. Trial counsel testified that there was "zero chance" of succeeding at a suppression motion - that it "would have been like firing at a cannon with a pea shooter." Additionally, trial counsel articulated valid strategic reasons for not attempting a meritless attempt at suppression and that by waiving defenses and pleading guilty, concessions would be possible. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. Whitehead v. State, 308 S.C. 119, 417 S.E.2d 530 (1992). See also Demnsey v. State, 363 S.C. 365, 610 S.E.2d 812 (2005) and McLaughlin v. State, 352 S.C. 476, 575 S.E.2d 841 (2003). The Applicant has not shown that counsel was deficient in that choice of tactics. This Court notes that no evidence or testimony was presented to indicate that the Applicant refused the search that the wife consented to; on the contrary, the record indicates that the Applicant's only comment to the search was that law enforcement may recover some marijuana, which is not a refusal to search. Accordingly, the wife's consent to search is valid and as trial counsel testified there is no real way to suppress the evidence recovered. Georgia v. Randolph, 547 U.S. 103, 107, 126 S.Ct. 1515, 1519 (U.S.Ga.,2006).

The Applicant's additional allegations regarding any deficiencies of the indictments were not developed, nor does this Court find any deficiencies in the indictments. Indictments are sufficient when they allege time and place, as required by law, and charge the crime substantially in the language of the statute or the common law which prohibits the crime or so plainly that the offense charged may be easily understood and, if the offense is statutory, that the offense

6

is contrary to the statute involved. S.C. Code Ann. § 17-19-20 (2003). All indictments must be viewed with a "practical eye" to determine whether they fulfill their function to notify the accused of the charge he must answer, notify the court of what judgment and sentence to pronounce, and present a bar to subsequent prosecution. See <u>State v. Gentry</u>, 363 S.C. 93, 610 S.E.2d 494 (2005).

Finally this Court notes, that (as stated during the hearing), the warrant in question
contains a valid signature (Scott D. Whittle).

**CONCLUSION**

Based on all the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court to grant his application. Counsel was not deficient in any manner, nor was Applicant prejudiced by counsel's representation. Therefore, this application for post conviction relief must be denied and dismissed with prejudice.

Except as discussed above, this Court finds that the Applicant failed to raise the remaining allegations set forth in his application at the hearing and has, thereby, waived them. As to any and all allegations that were or could have been raised in the application or at the hearing in this matter, but were not specifically addressed in this Order, this Court finds Applicant failed to present any probative evidence regarding such allegations. Accordingly, this Court finds that Applicant waived such allegations and failed to meet his burden of proof regarding them. Accordingly, they are dismissed with prejudice. A waiver is a voluntary and intentional abandonment or relinquishment of a known right. <u>Janasik v. Fairway Oaks Villas Horizontal Property Regime</u>, 307 S.C. 339, 415 S.E.2d 384 (1992). A waiver may be express or implied. "An implied waiver results from acts and conduct of the party against whom the doctrine is invoked from which an intentional relinquishment of a right is reasonably inferable." <u>Lyles v. BMI. Inc.</u>, 292 S.C. 153, 158-59, 355 S.E.2d 282 (Ct. App. 1987). The Applicant's failure to address these issue [sic] at the hearing indicates a voluntary and intentional relinquishment of his right to do so. Therefore, any and all remaining allegations are denied and dismissed.

This Court cautions Applicant that he must file and serve a notice of appeal within thirty (30) days from the receipt by counsel of written notice of entry of judgment to secure the appropriate appellate review. <u>See</u> Rule 203, SCACR. Pursuant to <u>Austin v. State</u>, 305 S.C. 453 (1991), an Applicant has a right to an appellate counsel's assistance in seeking review of the denial of PCR. Rule 71.1(g), SCRCP, provides that if the applicant wishes to seek appellate review, PCR counsel must serve and file a Notice of Appeal on the Applicant's behalf.

7

**IT IS THEREFORE ORDERED**:

1. That the Application for Post-Conviction Relief must be denied and dismissed
   with prejudice; and
2. The Applicant must be remanded to the custody of the Respondent.

ECF No. 16-3 at 5-12. Thereafter, Petitioner filed a pro se Notice of Motion and Motion for

Reconsideration and/or Relief from Order dated October 8, 2008. ECF No. 16-5. Instead of

obtaining a ruling on the motion by Judge Keesley, the PCR judge, the case was remanded to the

circuit court where Judge Casey Manning granted Petitioner's Motion "effectively granting

[him] a new PCR hearing." ECF No. 16-3 at 12. Judge Keesley explained what happened on

remand in the following order filed February 9, 2010, where he "yield[ed] to Judge Manning's

ruling:"

> The applicant filed a motion seeking to have the court reconsider a ruling in
> which it denied the application for post conviction relief (PCR). It is couched in
> terms of Rule 59(e), SCRCP, which would require that it be decided by the
> undersigned judge. Despite the pending motion, a hearing was scheduled before
> The Honorable L. Casey Manning, who issued an Order effectively granting the
> applicant a new PCR hearing. The undersigned judge was contacted about the
> conflicting orders. After reviewing the matter, it appears to the court that what the
> applicant was seeking in his motion appears to be relief under Rule 60, SCRPC,
> which any judge can hear. Therefore, the court defers to the ruling of Judge
> Manning and vacates its prior orders. A de novo hearing should be conducted on
> applicant's PCR request.

> The applicant filed the application for PCR on February 21, 2007. A hearing was
> held before the undersigned judge on June 26, 2008. Applicant was present at the
> hearing and was represented by Brian Jeffries, Esquire. Subsequently, an Order of
> Dismissal was filed on September 23, 2008. Applicant filed a Notice of Appeal on
> October 7, 2008.

> On or about October 16, 2008, applicant filed a pro se motion with the court
> claiming a conflict of interest because his appointed PCR attorney, Katherine
> Hudgins, Esquire, was also appointed for his wife/co-defendant's PCR
> application. Applicant then requested that the South Carolina Supreme Court
> dismiss his PCR appeal without prejudice so that this motion could be heard by

8

the circuit court. Accordingly, on June 24, 2009 the South Carolina Supreme Court remitted the case back to the circuit court.

In light of applicant's motion raising the issue of whether his PCR counsel had a conflict of interest and the likelihood that Ms. Hudgins would have to testify, the undersigned judge issued an order on August 5, 2009 requiring the motion reconvene after applicant was appointed new counsel. On August 11, 2009, Charlie J. Johnson, Jr., Esquire was appointed as applicant's new counsel. This matter was put back on the regular PCR docket and was heard by the Honorable L. Casey Manning on January 14, 2010. Judge Manning ruled that applicant should be afforded a new PCR.

Applicant's pro se motion filed on or about October 16, 2008 was titled a Rule 59(e), SCRCP motion, but it appears to the court that he is actually seeking relief that is more akin to Rule 60(b)(2), SCRCP, and was actually seeking to vacate the prior order on after-discovered evidence and other grounds. This court feels that any circuit judge can hear such a motion, and therefore, yields to Judge Manning's ruling.

AND IT IS SO ORDERED.

ECF No. 16-3 at 14-15. Thereafter, Petitioner had a second PCR hearing on the merits before the Honorable Thomas Cooper on January 18, 2013. App 154-235. Petitioner was present and represented by Attorney Alex Postic, and Assistant Attorney General Rob A. Corney appeared on behalf of the State. *See id.* Petitioner and Jahue Moore, Petitioner's plea counsel, appeared and testified at the hearing. *Id.* After the hearing, the PCR court denied and dismissed Petitioner's PCR Application with prejudice on March 8, 2013, making the following findings of fact, and conclusions of law:

This Court has had the opportunity to review the record in its entirety and has heard the testimony at the post-conviction relief hearing. This Court has further had the opportunity to observe the witnesses presented at the hearing, closely pass upon their credibility and weigh their testimony accordingly. Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).

In a post-conviction relief action, the Applicant has the burden of proving the allegations in the application. Rule 71.l(e), SCRCP; <u>Butler v. State</u>, 286 S.C. 441,

334 S.E.2d 813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the Applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.E.2d 674, 692 (1984); Butler, 286 S.C. 441, 334 S.E.2d 813 (1985).

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. Courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Butler, 286 S.C. 441, 334 S.E.2d 813 (1985). The Applicant must overcome this presumption in order to receive relief. Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1989).

Courts use a two-pronged test to evaluate allegations of ineffective assistance of counsel. First, the applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." Id. at 625 (citing Strickland). Second, counsel's deficient performance must have prejudiced the applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cherry, 300 S.C. at 117-189, 386 S.E.2d at 625. With respect to guilty plea counsel, the Applicant must show that there is a reasonable probability that, but for counsel's alleged errors, he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed. 2d 203 (1985).

*Failure to Challenge Invalid Warrant*

Applicant first contends counsel was ineffective for failing to challenge the arrest warrant issued as it was not "properly issued". Specifically, Applicant alleges the warrant simply bears an "X" on the signature line and therefore, the warrant is not properly sworn by a magistrate judge as required. Applicant testified counsel never raised this issue nor was he aware of counsel ever researching this issue to be raised at trial.

Counsel's testimony in this regard was very brief. Counsel stated he did have the opportunity to review the arrest warrant prior to Applicant's plea hearing and noted the "X" shaped marking in the warrant is in fact the signature of Lexington County Magistrate Scott Whittle. Counsel noted he is very familiar with Judge Whittle and recognized his signature on the warrant immediately.

This Court finds this claim to be without merit. Based on counsel's very credible testimony in this regard, it is clear the arrest warrant was properly authorized and sworn by an active Lexington County Magistrate with the authority to issue such

10

a warrant. Counsel is familiar with Judge Whittle's signature and recognized it on the warrant, thereby eliminating any need to raise a challenge based upon the alleged invalid signature. Accordingly, this court finds counsel to have acted objectively reasonable in not challenging the validity of the warrant on that ground.

Further, this Court finds Applicant has failed to satisfy his burden in proving resulting prejudice. It is been well-established by both the United States Supreme Court and the South Carolina Supreme Court that an unlawful arrest is not grounds for dismissal of the resulting charges. In U.S. v. Crews, 445 U.S. 463, 100 S.Ct. 1244 (1980), the Court specifically noted that "[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." Id. at 474, 100 S.Ct. 1251. "The exclusionary principle," the Court went on to say, "delimits what proof the Government may offer against the accused at trial, closing the courtroom door to evidence secured by official lawlessness... Respondent is not himself suppressible 'fruit' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." Id. See also Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509 (1952). The condemning evidence against Applicant was seized as a result of a consensual search of his house and Applicant was not arrested until after the search uncovered a videotape of Applicant performing sex acts on an incapacitated minor. Therefore, the alleged "unlawful arrest warrant" would not work to suppress the fruits of the search conducted on Applicant's house well in advanced of Applicant's arrest, nor would it deprive the state of its ability to prosecute Applicant on the charges. Accordingly, Applicant has failed to prove that had the arrest warrant been found invalid, there is a "reasonable probability" the outcome of the case would have been different.

### Failure to Challenge Search of Applicant's Home

Applicant next contends counsel was ineffective for failing to challenge law enforcement's search of his home in an effort to suppress the evidence obtained during the course of that search at trial. In raising this contention, Applicant alleges counsel also failed to properly investigate his wife's mental health history to raise a challenge to her ability to give valid consent to such a search. Both of those allegations are addressed collectively herein.

Applicant testified he was arrested July 21, 2004, on the current charges after which he spent roughly eighteen (18) months at the Lexington County Detention Center without making bond. He stated counsel and counsel's associate, Stanley Meyers, Esquire, met with him at the Detention Center a few times to review the charges he was facing and the state's evidence against him. Applicant said the

state had seized his computer and numerous videotapes as a result of his wife's consent to search their home.

In reviewing the facts leading thereto, Applicant stated his wife alleged she had been carjacked by a man fitting the description of a fugitive wanted at the time for killing a police officer. Applicant said when his wife was taken to the police station to answer questions for law enforcement about the alleged carjacking, she gave full consent for the authorities to search the house to "clear" it, ensuring the perpetrator was not there. Applicant said he was called to the police station where law enforcement "told" him they were going to search the house, but did not ask for his permission. Once inside the house, Applicant said, police found and played a videotape loaded in the VCR which depicted Applicant having sexual intercourse with an incapacitated young child. Applicant noted he did not know how police went about finding the VCR videotape or why they decided to play the tape.

Applicant alleges counsel was ineffective for failing to argue for suppression of that videotape and the other evidence obtained during the consensual search. He did concede counsel filed two (2) motions to suppress the evidence prior to trial, both of which Applicant received copies of, but said counsel failed to ensure the motions were heard and ruled upon. Applicant stated counsel should have challenged the search as it exceeded the scope of his wife's consent and because his wife lacked the ability to consent to such a search due to her mental health issues. Applicant testified law enforcement found anti-psychotic medication in his wife's car and alleged his wife had a long history of mental health problems affecting her competency, including bipolar disorder. Applicant stated his chances at trial hinged entirely on the state's ability to admit the tape at trial. Applicant contends had counsel pursued the suppression hearing based on the grounds above, the videotape would have been suppressed and he would have not pled guilty.

Finally, Applicant alleges he was not aware at the time that he was waiving his ability to challenge the admissibility of the tape on direct appeal by pleading guilty and, had he known a guilty plea without a suppression hearing would waive that issue, he would have insisted on proceeding with the suppression hearing. Applicant noted counsel did tell him he would be waiving his ability to raise almost all meritorious issues on appeal by pleading guilty, but said he did not believe that included the issue of suppression. On cross-examination, Applicant readily conceded the plea judge had advised him that by pleading guilty he would "give up [his] right to suppress any evidence that [he] might think might be suppressed in [the] matter or attack the state's case in any way", which he said he understood. Applicant also agreed on cross-examination that the videotapes recovered by police were "not pretty" and "very incriminating".

Counsel testified he recalled his representation of Applicant on the challenged charges and stated he was retained by Applicant in this matter. He noted Applicant is a friend of his whom he had represented in the past on unrelated litigation and said he "was sorry [Applicant] had these problems". Counsel stated on the day of the incident, Applicant [sic] received a call from Applicant stating "something was going on" with Applicant's wife and they were with law enforcement officers at SLED. He noted that when he arrived at SLED, Applicant and his wife were in separate rooms and the consensual search of Applicant's house had already been conducted and the videotape already uncovered.

Counsel stated the videotape showed Applicant having sex with a child roughly eight (8) years old while the child was drugged and incapacitated. Applicant's wife, counsel said, could be heard speaking from behind the camera as she filmed and there was no question the man in the video was Applicant. Counsel explicitly noted he did not recall any sex case he had seen in his career with such clearly documented evidence of the act. He plainly testified there "was zero chance of winning" at trial if the video was admitted.

Counsel stated he reviewed with Applicant the option of arguing for suppression through a pretrial hearing and said he filed the appropriate motion to suppress after "serious research" on how to most effectively attack admissibility. Specifically, counsel said, he did extensive research on arguing for suppression due to Applicant's wife alleged "inability to consent" as a result of her mental illness including bipolar disorder, but said his research revealed the chances of winning suppression on that basis were "nil".

On the day of trial, counsel met in chambers with the prosecuting solicitor, Luck Campbell, and the trial judge scheduled to hear the case, the Honorable Reggie Lloyd. Counsel noted he believed Judge Lloyd was a very strict judge and said he generally did not want to go to trial before Judge Lloyd, but the solicitor was calling the case that day and Judge Lloyd was not going to continue the matter. During the meeting, counsel articulated the bases for suppression to Judge Lloyd, including exceeding the scope and consent and Applicant's wife's inability to consent. Counsel said Judge Lloyd was "not impressed" with those arguments and, although the judge was not ruling on the motion at that time in chambers, there was "no way in the world he was granting the motion" to suppress. Counsel plainly stated Judge Lloyd made it clear he would deny the motion and allow the evidence admitted.

Counsel said after his meeting with Judge Lloyd, he explained all of this to Applicant and let him make the independent decision as to how he wanted to proceed. He said he told Applicant they would lose the motion to suppress and then likely lose the trial, but he could then challenge the issue of suppression on direct appeal. Counsel articulated that, based on those discussions, he was

"positive" Applicant was aware that by pleading guilty without conducting the suppression hearing he would be waiving his right to such a hearing and his ability to challenge admissibility of the tape on direct appeal.

Counsel said he "did everything in his power" to get plea concessions from the state during the plea negotiations, but the prosecuting solicitor was "absolutely determined" to convict Applicant and therefore did not extend any plea offers prior to trial. Counsel said he discussed this with Applicant, and Applicant himself testified at the PCR hearing he was aware there were no plea offers on the table. Counsel went on to say there was some indication from Judge Lloyd during their pretrial in-chambers meeting that he would give some consideration to Applicant in sentencing if he pled guilty. Counsel also noted the state was willing to let the plea be heard by Judge Barber rather than Judge Lloyd if Applicant did decide to plead, which counsel thought would be beneficial for Applicant. Counsel finished by stating it was ultimately solely Applicant's decision whether to plead guilty or go to trial where he would argue for suppression.

After a thorough review of the record and testimony presented at the evidentiary hearing, this Court finds counsel was not ineffective in his representation of Applicant in this regard. Counsel's testimony regarding his discussion with Applicant, preparation/evaluation of the case, and in-chambers discussions is **very credible** to this Court. Conversely, to the extent it contradicts with counsel's clear and convincing testimony or the underlying record, this Court finds Applicant's testimony to be **not credible**. Counsel undertook an extensive, diligent and objectively reasonable investigation into the issue of potential suppression of the evidence obtained by law enforcement during the search of Applicant's house. All the while, Applicant was continuously, sufficiently informed of all relevant matters pertaining to potential suppression by counsel.

The credible testimony reflects counsel meticulously reviewed the facts leading up to the search, the execution of the search, the evidence obtained as a result of the search and a plethora of law to compile an argument in support of suppression. Applicant was well aware of counsel's potential arguments to support such a motion, as well as the fact that he would waive his right to argue for suppression and appeal the outcome if he pled guilty. With all of this in mind, Applicant made the informed, intelligent and voluntary decision to waive his right to raise such an issue, both at trial and on appeal, in order to enter a plea before Judge Barber.

Applicant has failed to present any evidence or legal argument as to why trial counsel's conclusion about their [sic] being "zero chance" of suppression was in error. Further, counsel articulated valid strategic reasons for not attempting to present a meritless argument at the suppression motion hearing any [sic] that by pleading guilty, concessions would be available for Applicant.

14

Further, the record before this Court is clear in showing Applicant's wife was mentally evaluated prior to the February 6, 2006, plea hearing and found to be competent and able to stand before the plea judge. Applicant failed to produce any credible evidence to convince this Court that counsel failed to uncover some mental health issue(s) with Applicant's wife that could have been effectively presented in support of suppression. Moorehead v. State, 329 S.C. 329, 334, 496 S.E.2d 415, 417 (1998). ("Failure to conduct an independent investigation does not constitute ineffective assistance of counsel when the allegation is supported only by mere speculation as to the result."). Applicant's lay testimony regarding his wife's mental capacity is unpersuasive, not credible and insufficient to carry his burden in proving his wife in fact suffered from a mental defect so pervasive that it rendered her consent to the search invalid. For all of these reasons, this Court finds counsel's performance was not deficient.

Additionally, this Court finds Applicant has failed to prove resulting prejudice as this Court can find no "reasonable probability" that had counsel prepared the suppression motion in some other manner and argued it to the trial judge, the outcome of Applicant's case (either at trial or on direct appeal) would have been different. Counsel's credible testimony reflects Judge Lloyd fully intended to deny the motion if argued in pretrial. Applicant failed to provide this Court with any evidence or argument to contest that such a ruling would have resulted. Further, Applicant failed to convince this Court such a denial would be overturned by the Court of Appeals if preserved and raised thereafter. "When reviewing the circuit court's ruling on a motion to suppress based on the Fourth Amendment, 'an appellate court must affirm if there is an evidence to support ruling', and will reverse only when there is clear error." State v.Cheeks, 400 S.C. 329, 334, 733 S.E.2d 611, 614 (Cr. App. 2012), quoting State v. Wright , 391 S.C. 436, 442, 706 S.E.2d 324, 326 (2011). Applicant presented nothing to show such a denial would not have been supported by *any* evidence, or such a denial would have been a *clear error of law* on Judge Lloyd's part. Accordingly, this Court finds Applicant has entirely failed to carry his burden in proving resulting prejudice as well.

### *Failure to Move to Quash Defective Indictments*

Applicant finally argues counsel was ineffective for failing to move to quash the indictments against him as they were defective. In particular, Applicant alleges the indictments failed to set forth any victim's name. Counsel testified he did not see any basis to move to quash the indictments against Applicant and noted that had he done so, there was nothing to prevent the state from simply procuring a new indictment for the charges against Applicant.

This Court finds Applicant has failed to meet his burden in proving counsel was ineffective in this regard. In State v. Tumbleston, 376 S.C. 90, 654 S.E.2d 849 (Ct. App. 2007), the South Carolina Court of Appeals opined:

> "An indictment is sufficient if the offense is stated with [enough] certainty and particularity to enable the court to know what judgment to pronounce, and the defendant to know what he is called upon to answer and whether he may plead acquittal or conviction thereon. The true test of the sufficiency of an indictment is not whether it could be made more definite and certain, but whether it contains the necessary elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet."

Id. at 97 - 98, 654. S.E.2d at 853. "Therefore, an indictment passes legal muster when it charges the crime substantially in the language of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood." Id. Applicant's indictment on the charges challenged tracks the statutory language of each charge precisely. Further, counsel plainly noted making such a motion would not stop subsequent prosecution on the charges. Accordingly, counsel's performance was not objectively unreasonable based on professional norms in failing to file a motion to quash the indictment(s).

Further, the Court finds Applicant cannot prove resulting prejudice. Even if counsel had filed such a motion and been successful in quashing the indictments, the state could have reindicted Applicant on the same charges and subsequently pursued prosecution. Under S.C. Code Ann. § 17-19-90 (2003), "every objection to any indictment for any defect apparent on the fact thereof shall be taken…on motion to quash such indictment before the jury shall be sworn and not afterwards." Since the Double Jeopardy Clause of the Fifth Amendment attaches in a jury trial only once the jury is sworn, a successful motion to quash, by its very definition, will not work to bar subsequent prosecution on the same allegation on that grounds. See State v. Prince, 279 S.C. 30, 301 S.E2d 471 (1983). Likewise, jeopardy does not attach in a guilty plea setting until the defendant's plea is actually accepted by the plea judge. State v. Wilkins, 310 S.C. 81, 425 S.E.2d 68 (Ct. App. 1992). Accordingly, any motion to quash the indictment would not have prevented the state from pursuing the charges at a later date. Therefore, Applicant was not prejudiced by this alleged error.

Having found the allegations raised by Applicant at the PCR hearing to be wholly without merit, this Court finds the current application for post-conviction relief must be denied and dismissed **with prejudice**.

## CONCLUSION

16

Based on all the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court to grant his application. Therefore, this application for post conviction relief must be denied and with prejudice.

Except as discussed above, this Court finds the Applicant failed to raise all additional allegations raised in his application at the hearing and has, thereby, waived them. A waiver is a voluntary and intentional abandonment or relinquishment of a known right. Janasik v. Fairway Oaks Villas Horizontal Property Regime, 307 S.C. 339, 415 S.E.2d 384 (1992). A waiver may be express or implied. "An implied waiver results from acts and conduct of the party against whom the doctrine is invoked from which an intentional relinquishment of a right is reasonably inferable." Lyles v. BMI, Inc., 292 S.C. 153, 158-59, 335 S.E.2d 282 (Ct. App. 1987). The Applicant's failure to address these issues at the hearing indicates a voluntary and intentional relinquishment of his right to do so. Therefore, any and all remaining allegations are denied and dismissed.

This Court notes Applicant must file and serve a notice of appeal within thirty (30) days from the receipt by counsel of written notice of entry of judgment to secure the appropriate appellate review. See Rule 203, SCACR. Pursuant to Austin v. State, 305 S.C. 453 (1991), an Applicant has a right to an appellate counsel's assistance in seeking review of the denial of PCR. Rule 71.1(g), SCRCP, provides that if the applicant wishes to seek appellate review, PCR counsel must serve and file a Notice of Appeal on the Applicant's behalf. Your attention is directed to South Carolina Appellate Court Rule 243 for appropriate procedures for appeal.

**IT IS THEREFORE ORDERED**:

1. That the Application for Post-Conviction Relief must be denied and dismissed **with prejudice**; and
2. That the Applicant must be remanded to the custody of Respondent.

App. 236-250. PCR counsel Postic filed a Rule 59(e) Motion to Alter or Amend the Judgment on March 15, 2013. App. 251-52. Judge Cooper denied the Motion to Reconsider on April 24, 2013. App. 253. Thereafter, PCR counsel filed a Notice of Appeal on May 8, 2013. ECF No. 16-7. Appellate Defender Lanelle Durant represented Petitioner on appeal, filing a *Johnson* Petition[2] for Writ of Certiorari in the Supreme Court. ECF No. 16-8. The *Johnson* petition presented the

---

[2] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

following issue: "Did the PCR court err in failing to find trial counsel ineffective for not pursuing a hearing on the suppression motion he had filed to suppress the videotape of Petitioner having sexual intercourse with a child which was the only real evidence the state had?" *Id.* at 3. Petitioner filed a *pro se* petition for certiorari. ECF No. 16-9. On September 24, 2014, the South Carolina Supreme Court denied the Petition for Writ of Certiorari and granted appellate counsel's petition to be relieved as counsel, ECF No. 16-10, and issued the remittitur on October 10, 2014, ECF No. 16-11. This Petition followed on December 10, 2014.[3] ECF No. 1-3.

III.    Discussion

A. Federal Habeas Issues

Petitioner raises the following issues in his Federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE: Trial Counsel failed to pursue two (2) motions to suppress evidence that had been filed.
> Supporting Facts: Trial counsel filed two (2) motions to suppress evidence then failed to follow through. Motions are for suppressing all evidence obtained from Petitioner's home on the fact the State violated Petitioner's rights guaranteed by the 4th and 5th Amendments of the United States Constitution.
> (1) Trial counsel was ineffective because this would have been a pre-trial motion and could have changed the Petitioner's decision on which direction to proceed. Even in the event the Judge had ruled to allow the evidence, the Petitioner still had the right and opportunity to enter a plea.
> (2) Trial counsel failed to pursue motions to suppress evidence in:
>         (A) wife being incompetent to authorize and consent to search,
>         (B) search exceeded the scope of alleged consented search, and
>         (C) Law Enforcement had no probable cause to exceed the alleged
>              consented search.
> (3) Trial counsel failed to protect Petitioner's rights by not having the Judge hear motions and have that ruling preserved on record for future references, i.e.

---

[3] The habeas pleading date is the date Petitioner delivered his federal habeas petition to prison authorities. *See* ECF No. 1-3 at 2; *see Houston v. Lack,* 487 U.S. 266, 270–71 (1988) (stating that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to the district court).

appeals. Also, failing to have any objections that may have arose from pre-trial motions placed on record.

Any decision made on evidence being submitted should be based on method and range of search and seizure and motions to suppress evidence. Evidence itself is not the issue, but the way it was obtained is an issue. No person ever came forward and accused Petitioner. Trial counsel failed to present either motion to the court violating Petitioner's rights guaranteed by the Constitution from illegal search and seizure, effective counsel, and due process.  ECF No. 1 at 6; 20.

GROUND TWO: Trial counsel failed to inform Petitioner of his right to appeal and time limits involved.

Supporting Facts: Trial counsel met with Petitioner before trial and stated it was in the best interest to enter a guilty plea to all charges, that all motions were 'dead'. Petitioner was never informed of possible appeal procedures. After Petitioner was in the State's custody, a letter was written to trial counsel wanting to know the next steps in the legal process and why he was not informed of rights to appeal and the time limits involved. Trial counsel never responded. *Id.* at 8.

GROUND THREE: Trial counsel failed to challenge arrest warrants, i.e. not properly sworn.

Supporting Facts: On the area of the arrest warrant by authorizing Magistrate there is a mark as an 'X', not any legible or identifying signature. Trail counsel failed to question warrant's authority not being properly sworn. Trail counsel never requested authentication or comparison to another document signed by this Magistrate. *Id.* at 9.

GROUND FOUR:  Trial counsel failed to challenge insufficient and defective indictments.

Supporting Facts:  Trail counsel failed to challenge indictments 2004-GS-40-5692, 5693, 5725, 5726. These indictments should have been quashed due to insufficiency and errors. Number 5692 – charge is for 1st degree; verbiage is for 2nd. Numbers 5693 & 5725 do not state any age for degree of offense. No persons came forward to accuse Petitioner of these charges and the Face of all these indictments do not prevent risk from Double Jeopardy. *Id.* at 11.

GROUND FIVE: Trial counsel failed to develop a defense and record of wife's psychological history and competence at the time of events to support other arguments and issues within pre-trial motions, i.e. suppression.

Supporting Facts: Trial counsel knew of wife's battle with mental health. Petitioner's wife had a long documented history of not taking psychotropic medicines prescribed by a competent licensed State Mental Health physician. She would not take these medicines on a consistent basis and at times not at all. On the day events transpired she had been off her medication and just refilled prescriptions. When Law Enforcement found these medicines in the car at the

time of attempted carjacking, they began to focus on wife's mental state. Officers transported her to S.L.E.D. Headquarters under the pretense of giving a lie detector test which she was willing to take. Officers informed her that the description she gave of the person who attempted to take her car matched that of a suspect who was the object of a manhunt for killing a police officer and coerced her (without her having any legal representation present) into believing it was in her best interest to cooperate and allow search of premises for signs of the carjacker. Due to wife's mental state and lack of rational thinking from insufficient prescribed medication in her system, she was incapable of comprehending the rights and protection of rights that were being given up. Trial counsel never questioned wife's mental state and competency at the time of events. He could have pulled psychological history from the State Mental Health records, had test conducted at time of events to determine level of medication in her system, and had an evaluation performed before wife being properly medicated after being detained and treated for months in the county detention center under direct mental health supervision. *Id.* at 21.

B. Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    C.  Habeas Corpus Statute of Limitations

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claim is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). The AEDPA provides that "[a] 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1).  Further, the AEDPA provides that the limitation period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2244(d)(1)(A)-(D). The statute further provides that "[t]he time during which a properly filed application for State post-conviction or collateral relief with respect to the pertinent judgment or claim that is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

IV.    Analysis

A.  Timeliness of Petitioner's Application

Respondent argues that Petitioner's habeas petition should be dismissed because it is time barred. ECF No. 16 at 10-12.  As stated above, the AEDPA provides that "[a] 1 year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court." 28 U.S.C. § 2244(d)(1). The time limit begins to run at the "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The United States Supreme Court recently interpreted the two prongs of 28 U.S.C. § 2244(d)(1)(A) as follows:

> The text of § 2244(d)(1)(A), which marks finality as of "the conclusion of direct review or the expiration of the time for seeking such review," consists of two prongs. Each prong—the "conclusion of direct review" and the "expiration of the time for seeking such review"—relates to a distinct category of petitioners. For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the "conclusion of direct review"—when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in this Court, or in state court, expires. We thus agree with the Court of Appeals that because [petitioner] did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired.

*Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2012) (clarifying the Court's prior cases concerning 28 U.S.C. § 2244(d)(1)(A)).

Here, it is undisputed that Petitioner did not appeal his conviction and sentence. Accordingly, the AEDPA's one-year statute of limitations began running when his state convictions became final. *See Gonzalez*, 132 S. Ct. at 654 (finding a Petitioner's conviction and sentence become "final" when his "time for seeking review with the State's highest court expire[s]."). Here, Petitioner had ten days to timely file a notice of appeal from his conviction and sentence. *See* Rule 203 (b)(2), SCACR ("After a plea or trial resulting in conviction or a proceeding resulting in revocation of probation, a notice of appeal shall be served on all respondents within ten (10) days after the sentence is imposed."). Therefore, his conviction and sentence became final on February 16, 2006, or ten days after his guilty plea and sentencing on February 6, 2006. Pursuant to *Gonzalez*, the statute of limitations began running on February 16, 2006. Petitioner subsequently filed his PCR application on February 21, 2007 (2007-CP-400-1156). App. 67-94. By the time Petitioner filed his PCR application, 375 days elapsed from his one-year AEDPA statute of limitations. Though Petitioner's PCR proceedings would have tolled the one-year limitations period, *see* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."), Petitioner's limitation period had already expired before he sought to exhaust his state remedies. Furthermore, two months passed between the time Petitioner's PCR appeal was remitted on October 10, 2014, and the filing of his habeas Petition on December 10, 2014. Therefore, Petitioner's habeas petition is untimely. Thus, Petitioner's habeas petition is untimely under 28 U.S.C. § 2244(d) and must be dismissed.

      B.  The Statute of Limitations Should Not Be Equitably Tolled

The AEDPA's statute of limitations is subject to equitable tolling, which could, in effect, extend the final date for filing a habeas petition. *Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000). The Fourth Circuit has underscored the very limited circumstances in which equitable tolling of the AEDPA's limitations period will be permitted, holding that a habeas petitioner "is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc). Thus, rarely will circumstances warrant equitable tolling of the AEDPA limitations period:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris*, 209 F.3d at 330. The respondent bears the burden of asserting the AEDPA's statute of limitations, *Hill v. Braxton*, 277 F.3d 701, 705 (4th Cir. 2002); the petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the equitable-tolling doctrine, *Rouse*, 339 F.3d at 246.

In 2010, the United States Supreme Court considered the issue and also held that § 2244 "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010); *cf. Pace v. DiGuglielmo*, 544 U.S. 408, 418 n.8 (2005) (noting Court assumed without deciding that AEDPA's statute of limitations could be equitably tolled for purposes of that decision because respondent assumed it did). The *Holland* Court reiterated its prior holding in

24

*Pace* that the statute would be equitably tolled "only if [the petitioner] shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 544 U.S. at 418)).

In his response to Respondent's Summary Judgment Motion, Petitioner acknowledges that "Respondent claims 'Petitioner is time barred.'" ECF No. 23. Further, he acknowledges that Respondent represents that Petitioner's PCR application was outside the one-year statute of limitations, citing ECF No. 16 at 11 n.2, but he questions: "why was Petitioner allowed a Post-Conviction Relief hearing[?]" *Id.* at 2. In what appears to be an answer to his own question, Petitioner represents: "Due to mistakes at the State's Clerk of Court office, errors occurred in the clock-stamping of the PCR application." *Id.* (citing attachments 2 and 3).

The undersigned does not find that state officers erred in the date/clock-stamping of Petitioner's PCR documents. To the extent Petitioner asserts that his PCR Application was filed on February 6, 2007, rather than on February 21, 2007, based on attachments 2 and 3 to his Response, the undersigned finds the difference in the dates would not affect the calculation, and Petitioner's habeas Petition would still be untimely.[4] Additionally, the undersigned does not find that Petitioner has presented evidence of an extraordinary circumstance that was beyond his control that prevented him from filing a timely habeas petition. Therefore, Petitioner has failed to satisfy his burden of demonstrating entitlement to equitable tolling. Accordingly, equitable tolling of the statute of limitations is not merited. Based upon the foregoing, the Petition was not timely filed, and it is barred by Section 2244(d)(1).

---

[4] Even if the court considered the date Petitioner signed his PCR application, February 1, 2007, as the relevant date, his Petitioner would still be untimely. Using the February 1, 2007 date Petitioner would have had 15 days remaining to file a habeas petition after the appeal was remitted on October 10, 2014, or October 25, 2014.

Claims of actual innocence are often used to attempt to satisfy the "miscarriage of justice" exception to a procedural default. *See Schlup v. Delo*, 513 U.S. 298, 315 (1995). Even if the undersigned were to assume that an "actual innocence" exception exists for a habeas claim barred by the statute of limitations, Petitioner has failed to meet its extremely high threshold standard. A petitioner claiming actual innocence "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup*, 513 U.S. at 327). This "standard is demanding and permits review only in the 'extraordinary' case." *Id.* at 538 (quoting *Schlup*, 513 U.S. at 327 (internal quotations and citation omitted)). Also, Petitioner would have to show "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). In this matter, Petitioner has not offered any new evidence to support an "actual innocence" claim. Accordingly, it is recommended that Respondent's Motion for Summary Judgement be granted. [5]

V.    Conclusion and Recommendation

Wherefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 15, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

October 22, 2015                                                    Kaymani D. West

---

[5] Because the court finds that the statute of limitations bars Petitioner's § 2254 Petition, it is precluded from addressing the merits of his claims. *See Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995) (finding that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits).

26

Florence, South Carolina                    United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**